UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DENNIS EASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 5:19-cv-0515-LCB |
| ) | |
| HUNTSVILLE HOUSING ) | |
| AUTHORITY ) | |
| ) | |
| Defendant. | |

**MEMORANDUM OPINION**

This case was initially filed in the Circuit Court of Madison County, Alabama, but was removed to this Court on April 1, 2019. (Doc. 1). In its timely filed notice of removal, Defendant Huntsville Housing Authority ("HHA") asserted that this Court had original jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331. A review of the complaint reveals that the Plaintiff, appearing *pro se,* is asserting racial discrimination claims arising under the Fair Housing Act, 42 U.S.C. § 3601, et. seq. Accordingly, removal was proper under 28 U.S.C. § 1441. The Plaintiff did not file a motion to remand or otherwise contest removal.

I.   **The Plaintiff's Complaint**

Before this case was removed to federal court, the Plaintiff filed an amended complaint containing additional factual allegations that were missing from his

original complaint.[1]  (Doc. 6-2, p. 1).  After removal, the Plaintiff filed a letter that repeated his basic allegations and added some additional factual details.  (Doc. 4).  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). The Court will therefore treat this letter as a supplement to the Plaintiff's amended complaint.

As noted, the Plaintiff has asserted claims of racial discrimination.  In his amended complaint, the Plaintiff states that he is "seeking to file a civil rights claim against the defendant for violation of the equal rights due to each American citizen regardless of race as well as a violation of the Fair Housing Act."  (Doc. 6-2, p. 3).  Although the Plaintiff referred generally to other civil rights claims, he does not specifically reference any statute besides the FHA.  However, because all of the Plaintiff's claims relate to his residence in housing projects managed by HHA, the Court will presume that he intended to raise his claims under the FHA.

The Plaintiff did not specifically allege how HHA violated the FHA nor does he specify any particular provision of the FHA.  Rather, he generally contends that HHA does not treat all races equally with regard to various penalties it imposes on its residents.  He stated that "on numerous accounts, [he] has received

---

[1] The record from state court reveals that the Defendant filed a motion for a more definite statement pursuant to Rule 12(e), Ala R. Civ. P., after which the Plaintiff filed his amended complaint.

punishments and penalties dissimilar to other races." (Doc. 6-2, p. 1). However, the only penalty the Plaintiff specifically identified was an incident in which he was fined for allegedly tampering with the smoke detector in his apartment.

The Plaintiff also generally alleged that HHA does not apply its eviction procedures evenhandedly with respect to race. According to the Plaintiff, HHA has a policy whereby residents who are convicted of drug crimes are evicted. The Plaintiff claimed that a "Caucasian female was convicted for the illicit use of a controlled substance and following this conviction the proper protocol of eviction for illegal drugs was not carried out." However, the Plaintiff says, "minorities have been excessively evicted on unfair grounds." (Doc. 6-2, p. 3). The Plaintiff asserted that he has never been convicted of a crime involving illegal drugs and did not allege that he was evicted or threatened with eviction on that ground.

Finally, the Plaintiff claims that after he filed various complaints and grievances with HHA, he was subjected to retaliatory threats of eviction. As discussed above, the Plaintiff was cited for tampering with his smoke detectors. According to the Plaintiff, the HHA persuaded a third-party inspection company to create a false report indicating that his smoke detectors were missing from his apartment. The Plaintiff asserted that the HHA used that violation as a basis to threaten him with eviction. As best the Court can determine, the Plaintiff has alleged that HHA assessed a fine for the missing smoke detectors, refused to

accept his rent payments until the fine was paid, and then threatened to evict him for not paying his rent. Although not stated in his complaint, the Plaintiff concedes that HHA waived the fine related to the smoke detectors.

HHA has denied all of the Plaintiff's claims and asserted numerous defenses. Before the Court is HHA's motion for summary judgment. (Doc. 16). The Plaintiff did not file a timely response.[2] For the reasons that follow, the Court finds that HHA's motion for summary judgment is due to be granted.

## II. HHA's Motion for Summary Judgment

### a. HHA's Statement of Undisputed Facts

It is undisputed that the Plaintiff has been a resident with HHA since 1998. Although the Plaintiff has always lived alone, he resided in a two-bedroom apartment at Butler Terrace since he first became a HHA resident in 1998. On December 6, 2018, the Plaintiff was transferred to a one-bedroom apartment at Brookside. According to HHA, the Plaintiff was "over housed" for the 20 years he lived at Butler Terrace. HHA explained that residents are sometimes placed in housing with more bedrooms than they require in order to prevent vacancies. However, when appropriately-sized apartments become available, residents are transferred to those units. HHA initially notified the Plaintiff that a one-bedroom

---

[2] The Plaintiff's response to the Defendant's motion for summary judgment was due on December 6, 2019. On January 14, 2020, the Plaintiff filed a motion for extension of time to file his response. (Doc. 22). The Court denied that motion.

unit was available at Johnson Towers. However, citing various medical conditions and a fear of heights, the Plaintiff filed a grievance to avoid being transferred to Johnson Towers. HHA ultimately acceded to the Plaintiff's wishes and transferred him to Brookside. At his deposition, the Plaintiff testified that, although he initially did not want to move from Butler Terrace, he believed that Brookside was a "nice neighborhood" and had no issues with living there. (Doc. 18-1, p. 30). Nevertheless, it appears that the move to Brookside was the triggering event for this lawsuit. *See Id.*

It is also undisputed that, in February of 2017, a third-party inspection company performed a safety inspection of the Plaintiff's apartment at Butler Terrace and cited the Plaintiff for allegedly having two smoke detectors that were missing. The Plaintiff was fined $80 for the alleged violation, but HHA ultimately waived the fine and did not require him to pay. However, the Plaintiff maintains that his smoke detectors were not missing and that the report to the contrary was false.

The Court notes that, at the time of the Plaintiff's deposition, HHA was in the process of evicting him for refusing to sign an updated lease, which he claimed not to understand.[3] The Plaintiff conceded that HHA offered to explain the lease

---

[3] It is unclear whether actual eviction proceedings had been initiated in state court. However, as of the date of this memorandum opinion, the Plaintiff has not filed a change of address with the Court or otherwise indicated that he has been evicted.

to him, but stated that he refused because he did not trust them. However, the complaint makes no mention of these particular eviction proceedings.

### b. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw.*

*Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### c. Discussion

In its motion for summary judgment, HHA argues that there is no genuine issue of material fact as to the Plaintiff's FHA claim. The Court agrees. To prevail on a claim of race discrimination under the FHA, a plaintiff must prove either "(1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation." *Bonasera v. City of Norcross*, 342 F. App'x 581, 583 (11th Cir. 2009)(*citing Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008); *Hallmark Developers, Inc. v. Fulton Cty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006)). The Plaintiff did not allege that HHA refused to make an

accommodation. Rather, he has alleged that HHA took certain actions against him based on his race and that it retaliated against him when he filed grievances. Thus, he has alleged intentional discrimination in the form of disparate treatment and retaliation.

Disparate treatment claims are those that assert "discriminatory intent or motive." *Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Cmty. Project, Inc.*, 135 S. Ct. 2507, 2513 (2015)(*quoting Ricci v. DeStafano*, 557 U.S. 557, 577 (2009)). In order to prove disparate treatment, a plaintiff is required "to show that he has actually been treated differently than similarly situated" Caucasians. *Schwarz*, 544 F.3d at 126. *See also Douglas Energy Relief Ass'n v. City of Douglas, Ga.*, 556 F. App'x 820, 822 (11th Cir. 2014)(*citing Schwarz*, 544 F.3d at 1216). Thus, to prevail on his disparate treatment claim, the Plaintiff must prove not only that he was treated differently, but that HHA "actually intended or [was] improperly motivated in [its] decision to discriminate against persons protected by the FHA." *Bonasera*, 342 F. App'x at 584 (*quoting Reese v. Miami–Dade Cty.*, 242 F. Supp. 2d 1292, 1301 (S.D. Fla. 2002)). Likewise, to prevail on his retaliation claim, Eason must provide evidence that HHA's "adverse decisions were motivated by an intent to retaliate against [him] or harass [him]." *Binns v. City of Marietta, Ga.*, 704 F. App'x 797, 802 (11th Cir. 2017).

The Eleventh Circuit has held that the three-part burden of proof test developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), governs the analysis of discrimination claims brought under the FHA. *Sec'y, U.S. Dep't of Hous. & Urban Dev., on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990). Under that test:

> First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext.

*Id.* quoting *Pollitt v. Bramel*, 669 F.Supp. 172, 175 (S.D. Ohio 1987)(Fair Housing Act claim)(*quoting in turn McDonnell Douglas*, 411 U.S. at 802, 804, 93 S.Ct. at 1824, 1825) (citations omitted).

The Plaintiff did not file a response to HHA's motion for summary judgment. Thus, he has failed to "come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). Nevertheless, this Court has thoroughly examined the record and can find no evidence, aside from the Plaintiff's speculation, that HHA's actions were motivated by the Plaintiff's race. Thus, the Plaintiff has failed to establish a prima facie case of discrimination.

As to the Plaintiff's allegation that HHA does not apply its eviction policies evenhandedly with respect to race, he offered only a blanket allegation that a white female was not evicted following a drug conviction. The Court questions whether the Plaintiff even has standing to bring such a claim when it is undisputed that he has not been evicted or threatened with eviction based on a criminal conviction. It is undisputed that the Plaintiff has never been convicted of a crime involving illegal drugs. Nevertheless, at his deposition, Eason testified that he did not know the white female's name, where she lived, or the specific crime she was convicted of. Thus, even if this claim were proper, Eason has failed to produce or identify any evidence that a person of a different race was treated more favorably. Thus, he has not shown a prima facie case of discrimination under the FHA with regard to this claim.

As to the Plaintiff's allegation that the citation he received regarding his smoke detectors was racially motivated or done in retaliation for his complaints, there is simply nothing in the record that would support that claim. As noted, the Plaintiff even admitted that HHA waived the fine it had imposed once it discovered that there were no photographs to support the allegation. Thus, even if the Plaintiff had identified residents of a different race who were not cited and fined for having missing smoke detectors - which he did not - it does not appear that HHA took any adverse action against him. Again, even viewing the evidence in the light most

11

favorable to the Plaintiff, the Court finds no evidence that would establish a prima facie case of discrimination be it disparate treatment or retaliation.

In his complaint, the Plaintiff alleged that he had been subjected to discriminatory punishments and penalties on "numerous accounts." However, the above-mentioned instances were the only ones that he specifically mentioned in his complaint. At his deposition, the Plaintiff discussed other instances in which he felt like HHA discriminated against him, e.g., giving him a racially-motivated parking citation and moving him to a smaller apartment because of his race. The Plaintiff brought several photographs and documents to his deposition which the Court has reviewed. However, nothing in the record demonstrates a discriminatory motive on the part of HHA with respect to any of its dealings with the Plaintiff. Thus, the Plaintiff has failed to demonstrate a prima facie case of discrimination under the FHA with respect to any of his claims. Because the Plaintiff has failed to meet the first prong of the *McDonnel-Douglass* framework, the Court need not examine the remaining factors.

### III. Conclusion

For the foregoing reasons, the Court finds that the Plaintiff has failed to demonstrate a prima facie case of discrimination under the FHA with respect to any of his claims. Accordingly, there exists no genuine issue of material fact to be

determined at a trial, and summary judgment is due to be **GRANTED** in favor of HHA.  A final order will be entered separately.

   **DONE** and **ORDERED** April 23, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE